UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERTRUST TECHNOLOGIES CORP., <br> 920 Stewart Drive <br> Sunnyvale, CA 94085 <br><br> *Plaintiff*, <br><br> v. <br><br> CINEMARK HOLDINGS, INC., <br> 3900 Dallas Parkway, Suite 500 <br> Plano, TX 75093 <br><br> AMC ENTERTAINMENT HOLDINGS, INC., <br> 11500 Ash Street <br> Leawood, KS 66211-7804 <br><br> REGAL ENTERTAINMENT GROUP, <br> 7132 Regal Lane <br> Knoxville, TN 37918 <br><br> *Defendants*. | Case No. _____ <br><br> Pending in the Eastern District of Texas, Marshall Division <br> Case No. 2:19-cv-266 (LEAD CASE) <br> Case No. 2:19-cv-265 <br> Case No. 2:19-cv-267 |

**MEMORANDUM IN SUPPORT OF INTERTRUST TECHNOLOGIES
CORPORATION'S MOTION TO COMPEL CINEDIGM CORP.
<u>TO COMPLY WITH PROPERLY SERVED SUBPOENA</u>**

In this ancillary action, Intertrust Technologies Corporation ("Intertrust") moves pursuant to Rule 45 of the Federal Rules of Civil Procedure for an order compelling Cinedigm Corp., 237 West 35th Street, Suite 605, New York, NY 10001 ("Cinedigm") to comply with Intertrust's subpoena to produce documents (the "Subpoena") in *Intertrust Technologies Corp. v. Cinemark Holdings, Inc. et al.* No. 2:19-cv-266 (E.D. Tex.) and two related cases (the "Cinemark Litigation"). Cinedigm is a nonparty who possesses unique information that is directly relevant to Intertrust's claims in the Litigation and did not provide any objections to the Subpoena within the deadline for doing so (or at all).

-1-

The Subpoena was properly served on Cinedigm's registered agent in Delaware on April 29, 2020 and required compliance by May 19, 2020 by producing the documents in this District, which is within 100 miles of Cinedigm's registered agent.  To date, Cinedigm has neither served any objections to the Subpoena, nor produced the requested documents.  Cinedigm has ignored Intertrust's numerous attempts to confer about the Subpoena, instead agreeing to meet and confer and then referring Intertrust to different outside counsel, who do not respond to Intertrust's communications.  The underlying action has a fact discovery cut-off of November 23, 2020 and Cinedigm's continued failure to respond prejudices Intertrust's ability to prosecute its case.

Significant public information, including statements made by Cinedigm itself, indicate that Cinedigm possesses discoverable information relevant to the claims and defenses in the Cinemark Litigation.  Because the Subpoena was properly served and seeks relevant documents and because Cinedigm failed to respond in any way to the Subpoena by May 19, 2020 (its deadline for compliance), Intertrust requests that this Court rule that any of Cinedigm's objections to the Subpoena have been waived and compel Cinedigm to produce responsive documents in its possession, custody, or control within 15 days.

## I.     BACKGROUND

### A.     The Litigation

Intertrust filed separate actions against Defendants Cinemark Holdings, Inc., AMC Entertainment Holdings, Inc., and Regal Entertainment Group (collectively "Defendants") on August 7, 2019, which have since been consolidated under the Cinemark case caption.  Intertrust alleges that Defendants infringe United States patents legally owned by Intertrust, including: U.S. Patent No. 6,157,721, U.S. Patent No. 6,640,304, U.S. Patent No. 6,785,815, U.S. Patent No. 7,340,602, U.S. Patent No. 7,406,603, U.S. Patent No. 7,694,342, U.S. Patent No. 8,191,157,

U.S. Patent No. 8,191,158, U.S. Patent No. 8,931,106, and U.S. Patent No. 9,569,627 (collectively "the Asserted Patents"). The Cinemark Litigation is pending in the Eastern District of Texas. Fact discovery is set to close on November 23, 2020, with trial scheduled for March 1, 2021. E.D. Tex. D.I. 142.

The Asserted Patents claim, among other things, the use of a security architecture that is employed by content creators and the cinema industry to securely distribute original release and other high-value content in digital form. The cinema industry adopted Intertrust's patented technologies through specifications developed and promulgated by Digital Cinema Initiatives (DCI), LLC ("DCI"), a joint venture of major motion picture studios. The original DCI specification was released in 2005. Widespread distribution of feature films in digital format followed a few years later, and almost all feature films are now distributed digitally, using the DCI specification. Defendants infringe Intertrust's Asserted Patents through their use of DCI-compliant equipment to show movies and other encrypted content in the movie theaters that Defendants own and operate.

**B.     The Subpoena**

Respondent Cinedigm is a non-party who possesses information relevant to the claims and defenses asserted in the Cinemark Litigation. Intertrust served Cinedigm with the Subpoena on April 29, 2020 and required compliance by May 19, 2020. *See* Ex. 1 (Subpoena). Cinedigm is "a leading distributor of independent movie, television and other short form content managing a library of distribution rights . . . across theatrical, digital, physical, home and mobile entertainment platforms" that "***played a significant role in the digital distribution revolution***" including "***transitioning over 12,000 movie screens from traditional analog film prints to digital distribution.***" *See* Ex. 2 (Cinedigm 2020 Annual Report on SEC Form 10-K) (emphasis

added).  Although the Subpoena was issued by the Eastern District of Texas, it requires compliance in the United States District Court for the District of Columbia (the "Court"), which is within 100 miles of the location where Cinedigm was served.  *See* Ex. 3 (Google Maps Distance Calculation).  Intertrust served Cinedigm through its registered agent in Delaware on April 29, 2020.  *See* Ex. 4 (Subpoena Proof of Service).  The response to Intertrust's subpoena was due on May 19, 2020, but Cinedigm failed entirely to respond by that date, and did not lodge any objections to the subpoena or produce documents.

In hopes of avoiding unnecessary motion practice, Intertrust made efforts to reach Cinedigm through alternate means of contact.  On July 14, 2020, Intertrust sent an email to Gary Loffredo, Cinedigm's Chief Operating Officer, President of Digital Cinema and General Counsel.  Ex. 5.  Mr. Loffredo did not respond to Intertrust's email.  Decl. ¶ 7.  On July 29, 2020, Intertrust sent a follow-up email to Mr. Loffredo stating that Intertrust would be moving to compel compliance with the subpoena.  Ex. 6.  Mr. Loffredo responded on July 29, 2020 requesting a call "to see exactly what [Intertrust is] looking for."  *Id.*  Mr. Loffredo did not respond with dates for the call he requested.  Intertrust sent a follow-up email on August 4, 2020 and the parties met and conferred on August 7, 2020.  Ex. 7.  Counsel for Intertrust explained the categories of information it is seeking through the subpoena.  In response, Cinedigm's General Counsel stated that Cinedigm had nothing to do with Defendants and would not have responsive documents.  Decl. ¶ 8.  After the meet and confer, Intertrust informed Cinedigm that discovery in the Cinemark Litigation had confirmed that Cinedigm entered into agreements with at least certain Defendants, despite its representations to the contrary on the meet and confer.  Intertrust again requested that Cinedigm produce responsive documents.  Ex. 7 (McCracken Aug. 18, 2020 email).  Receiving no response, Intertrust sent another follow-up email on August 24, 2020,

-4-

informing Cinedigm that it would have to proceed with a motion to compel and requesting Cinedigm's consent to have the motion heard in the Eastern District of Texas. Mr. Loffredo responded that day that Cinedigm "would like to get our outside counsel involved to narrow the scope of the production" and that Cinedigm would "produce any documents once we agree on a narrow scope of documents." Ex. 7 (Loffredo Aug. 24, 2020 email). After repeated requests from Intertrust for the name of Cinedigm's outside counsel, Intertrust contacted Carol Sherman of Kelley Drye & Warren LLP. Ex. 7 (McCracken Sept. 14, 2020 email to Cinedigm); Ex. 8 (McCracken Sept. 15, 2020 email to Sherman). Ms. Sherman spoke with Intertrust's counsel on September 17, 2020 and stated that she is Cinedigm's outside corporate counsel and represented that she was referring this matter to a colleague who would follow up in the next week. Decl. ¶ 11. Intertrust followed up with two emails seeking the contact information for counsel that would handle the subpoena response. *Id.* Cinedigm did not, and still has not, responded. Decl. ¶ 12. Despite months of ignored attempts by Intertrust to resolve the Subpoena, as of this filing Cinedigm has refused to comply with the Subpoena.

      **C.    The Document Requests**

The Subpoena seeks documents from Cinedigm that relate to central issues in the case that Cinedigm was centrally involved in. The Subpoena originally included 26 requests, but Intertrust narrowed the Subpoena to 16 highly-relevant requests for this Motion. For example, Request Nos. 2, 6, 7, 9, and 19- 21 seek documents relating to the adoption of the virtual print fee ("VPF") structure and other incentive structures to facilitate the adoption of digital technology, records of such payments that show payments by movie theater and screen, and documents related to the termination of VPF payments in 2020. Cinedigm publicly claims it "creat[ed] [the] Virtual Print Fee model" and "pioneered the digital conversion" of the theater

industry.  *See* Ex. 9 (Cinedigm website: "Digital Cinema Excels with Cinedigm").  Request Nos. 1, 4, and 5 all seek documents relating to any equipment that Cinedigm contracted to sell or lease to Defendants, which is the equipment accused of infringing Intertrust's Asserted Patents.

## II.   ARGUMENT

Cinedigm has no legitimate excuse for its failure to comply with (or even respond to) the Subpoena.  The Subpoena was properly served and seeks information that is directly relevant to the Cinemark Litigation.  Rule 45(a) of the Federal Rules of Civil Procedure authorizes the issuance of a subpoena seeking the production of documents from a nonparty, such as Cinedigm.  *See In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013).  When deciding a motion to compel a nonparty to produce documents, courts consider "whether the discovery sought is relevant."  *Id.*  "[W]ith respect to a Rule 45 subpoena, a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party."  *Id.*

A non-party objecting to production "has a heavy burden to show that the subpoena should not be enforced" and must serve objections before the earlier of the date of compliance or 14 days after service.  *Millenium TGA, Inc. v. Comcast Cable Commc'ns, LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012); Fed. R. Civ. P. 45(c)(2)(B).  Failing to serve written objections within the deadline typically waives objections.  *In re Denture Cream Prods.*, 292 F.R.D. at 124; *U.S. ex. rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002) ("Failure to serve timely objections [to Rule 45 subpoena] waives all grounds for objection, including privilege.").

As set forth below, Cinedigm was properly served with the Subpoena, which seeks relevant information, and failed to serve timely objections to the Subpoena or produce the requested documents.  The Court should therefore grant this Motion and compel compliance.

### A. The Subpoena Was Properly Served

The subpoena was properly served on Cinedigm's registered agent in Wilmington, Delaware on April 29, 2020 and Cinedigm has never claimed otherwise. *See* Ex. 4 (Subpoena Proof of Service). The subpoena required compliance by May 19, 2020. *Verisign, Inc. v. XYZ.com, LLC*, No. 15-mc-175-RGA, 2015 WL 7960976, at *3 (D. Del. Dec. 4, 2015) ("Rule 45 does not define 'reasonable time,' but several courts have concluded fourteen days from the date of service as presumptively reasonable."). The designated place of production (the offices of Quinn Emanuel Urquhart & Sullivan, LLP in Washington, D.C.) is within 100 miles of Cinedigm's designated service address in Wilmington, Delaware and within this District.[1] *See* Ex. 3 (Google Maps Distance Calculation).

To the extent that Cinedigm contends it had a basis to contest the propriety of service (it does not), it has waived any such objection by failing to serve written objections within 14 days of service or moving to quash the subpoena within the time set for compliance. *See* Fed. R. Civ. P. 45(d)(2)(B), (d)(3)(A); *PHL Variable Ins. Co. v. Alan Wollman Ins. Tr.*, No. 08-53-JJF, 2010 WL 2836388, at *1 (D. Del. July 16, 2010) ("[C]ourts generally require a motion to quash to be made in the 14 days required to object to a subpoena [] or by the close of the compliance period listed in the subpoena, if the period is of a reasonable duration.").

### B. The Subpoena Seeks Relevant Information

The Subpoena seeks information that is directly relevant to Intertrust's claims and defenses in the Cinemark Litigation. A party is entitled to obtain discovery of any non-

---

[1] Although Cinedigm has made no objection to this, or any other, term in the Subpoena, Intertrust would readily agree to the production of documents electronically or physically at any other convenient location in the United States for Cinedigm. *See, e.g., New Atlantic Venture Fund III v. Vir2us, Inc.*, No 16-95-SLR, 2016 WL 3583797, at *3 (D. Del. June 30, 2016) (changing the location of production from California to Delaware).

privileged matter that is relevant to any claims or defenses.  Fed. R. Civ. P. 26(b)(1); *see also* 9A Charles Alan Wright et al., *Federal Practice and Procedure* § 2452 (3d. 2019) (the scope of discovery through a third-party subpoena is the same as under Rule 26).  Numerous courts, including this District, have emphasized that "the federal rules allow broad and liberal discovery."  *Pacciti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999); *Ledecky v. Source Interlink Companies, Inc.*, No. 05-cv-1039 (JGP), 2006 WL 8460101, at *1 (D.D.C. Sept. 29, 2006) ("The Court also notes that it is well recognized that the federal rules allow broad and liberal discovery.") (citing *Pacciti*); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").

     Due to the breadth of relevance, this district has found "the general policy favoring broad discovery is particularly applicable where, as here, the court making the relevance determination has jurisdiction only over the discovery dispute, and hence has less familiarity" with the underlying case and that "doubts regarding the relevance of requested information should be resolved in favor of permissive discovery."  *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007); *see also Celanese Corp. v. E.I. duPont de Nemours & Co.*, 58 F.R.D. 606, 611 (D. Del. 1973) (noting that an ancillary court should act with "hesitancy in foreclosing discovery based on irrelevance."); *Coventry First LLC v. 21st Servs.*, No. 05-cv-2179-IEG (NLS), 2005 WL 8173350, at *4 (S.D. Cal. Dec. 22, 2005) ("in a case like this one where the court's only connection with a case is resolution of an ancillary discovery dispute, the court should take a particularly broad view of relevance"); *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987) ("A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should

be 'especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt, the rule indicates that the court should be permissive.'") (internal citations omitted).

Cinedigm entered into contracts with at least certain Defendants in the Cinemark Litigation and, by its own admission, played a central role in the adoption, implementation, and promotion of digital cinema technology. *See, e.g.*, Ex. 9 (Cinedigm website: "Digital Cinema Excels with Cinedigm") ("Cinedigm pioneered the digital conversion of the theatrical exhibition"); *id.* ("Cinedigm's Digital Cinema Division helped launch the theatrical digital exhibition transition from traditional film prints by creating Virtual Print Fee model"); Ex. 11 (2012 Cinedigm Form 10-K) at 6 (referring to contract between Cinedigm entity and AMC). Intertrust thus served Cinedigm with the Subpoena seeking information within its possession, custody, and control, including information relevant to Defendants' adoption of the accused technology, the value of the patented technology, and damages in the Cinemark Litigation. In order to quantify damages, including through later expert analysis, Intertrust needs to obtain materials describing the anticipated and actual financial impact of the transition from analog to digital distribution and exhibition in the cinema market at large, and as to the Defendants. Whether measured through a reasonably royalty (base and rate) or lost profits, damages pursuant to 35 U.S.C. § 284 require determining the benefits the Defendants derived from infringement. Proper evaluation of these benefits requires information about costs and revenues, including information Cinedigm has about the cost of digital projection and storage equipment and actual and anticipated revenues generated by digital equipment and the digital transition.

A key hurdle for the film to digital content distribution was getting exhibitors (*i.e.*, movie theater operators, including Defendants) to install and adopt the technology required for digital

exhibition.  The security technology used in that equipment incorporates and infringes Intertrust's intellectual property.  To that end, a coalition of various third parties coordinated to create an artificial vehicle to subsidize the equipment costs for the exhibitors' transition.  This subsidy program used Virtual Print Fees or VPFs which are paid by the studios and facilitated by intermediaries to ultimately enable the conversion to digital exhibition at movie theaters owned by Defendants.  The Subpoena includes a number of requests addressing VPFs.  *See supra* I.C.  These VPFs, any financial studies of the value of the digital conversion, and the negotiations amongst the third parties involved in creating this arrangement are relevant to quantify the benefit conferred on Defendants from their use of Intertrust's technology and Cinedigm's own public statements confirm it has such documents.

Cinedigm was an active participant in the transition from film to digital content distribution, and particularly in developing the financial framework to make the film-to-digital transition viable, and possesses and controls documents related to anticipated financial results from the transition, and the VPF program.  Cinedigm publicly states that it was involved in "creating" the VPF model:  Cinedigm's website explains that it "pioneered the digital conversion of the theatrical exhibition industry" and "helped launch the theatrical digital exhibition transition … by creating [the] Virtual Print Fee model and deploying digital projections systems to over 1,000 Movie theatres in the US and Canada."  *See* Ex. 9 (Cinedigm website: "Digital Cinema Excels with Cinedigm").  Cinedigm was privy to the negotiations and its own internal analyses underlying the VPF model, which would not be discoverable from Defendants.

Cinedigm's integral and unique role the financial underpinning of digital content exhibition did not end with the creation of the VPF model either.  Cinedigm's website further explains that the company "continues to provide monitoring, billing, collection, verification, and

other management services in these markets."  Cinedigm's statements to the SEC on its Form 10-K confirm the centrality of VPFs to its business model.  *See* Ex. 2 at 6 (describing Cinedigm's management of VPF payments "earned pursuant to the contracts with movie studios and distributors" for showings on screens using digital projection systems).  Today, Cinedigm's satellite distribution network delivers movies, other content, as well as encryption keys to exhibitors, "improving upon the less efficient need to deliver such content to theaters via truck."  *See* Ex. 10 (http://investor.cinedigm.com/news-releases/news-release-details/cinema-satellite-cinedigm-double-network-satellite-enabled).

Given Cinedigm's unique role, the Subpoena seeks documents relating to the creation of the VPF structure, the payment of VPF fees, and the termination of the VPF fee structure; the financing of the transition to digital cinema; and the equipment that Cinedigm contracted to sell or lease to Defendants, which is the equipment accused of infringing Intertrust's Asserted Patents.  *See infra* Section I.C.  These documents are highly relevant to central issues in the underlying litigation and unquestionably within the possession, custody, and control of Cinedigm given its own public admissions.

Even if Cinedigm had any objections to the relevancy or scope of the Subpoena, it has waived those objections by failing to serve written objections or moving to quash it before the deadline for compliance.  *TRW, Inc.*, 211 F.R.D. at 392 ("Failure to serve timely objections [to Rule 45 subpoena] waives all grounds for objection, including privilege."); *see also Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 666-70 (N.D. Fla. 2010) (nonparty waived all objections by failing to serve written objections or moving to quash subpoena and therefore motion to compel compliance "is due to be granted on this basis alone"); *McCabe v. Ernst &*

*Young, LLP*, 221 F.R.D. 423, 425-27 (D.N.J. 2004) (holding that nonparty waived all objections to subpoena by failing to timely move to quash or serving written objections).

In sum, the Court should grant this Motion to enable Intertrust to obtain important evidence that is necessary to establish patent infringement and prove the extent of Intertrust's damages in the Cinemark Litigation.

### III.   CONCLUSION

For all of the foregoing reasons, Intertrust respectfully requests that this Court issue an order pursuant to Federal Rule of Civil Procedure 45 that all of Cinedigm's objections to the Subpoena have been waived and compelling Cinedigm to produce all responsive documents in its possession, custody, or control within 15 days.

Dated: October 20, 2020

Repectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

*/s/ Peter Benson*
Peter Benson (DC Bar No. 1047289)
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Phone: (202) 538.8000
Fax: (202) 538.8100
Email: peterbenson@quinnemanuel.com

Rachael L. McCracken (*pro hac vice forthcoming*)
865 South Figueroa Street 10th Floor
Los Angeles, CA 90017
Phone: (213) 443-3000
Fax: (213) 443-3100
Email: rachaelmccracken@quinnemanuel.com

*Attorneys for Intertrust Technologies Corporation*

# **CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2020, I caused the foregoing to be filed by sending an electronic copy to the Court's new case intake email at DCDml_intake@dcd.uscourts.gov. I further certify that a true and correct copy of the foregoing document was served on Cinedigm Corporation, through its registered agent, via U.S. Mail at:

>Cinedigm Corporation
>Corporation Service Company
>251 Little Falls Drive
>Wilmington, DE 19808

Additionally, on October 20, 2020, Cinedigm Corporation was also served through its attorney via U.S. Mail and electronic mail at:

>Carol Weiss Sherman
>Kelley Drye & Warren LLP
>101 Park Avenue
>New York, NY  10178
>CSherman@KelleyDrye.com

Counsel for Defendants in *Intertrust Technologies Corp. v. Cinemark Holdings, Inc. et al.*, No. 2:19-cv-266 (E.D. Tex.), were served via electronic mail, pursuant to the service agreement in the Cinemark Litigation.

Dated: October 20, 2020    /s/ Peter Benson
                           Peter Benson